**David HENSLEY, #63816,**

v.

**Col. Wingate WHITE, Warden.**

**Misc. No. 956.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 27, 1967.

David Hensley, in pro. per.

Jack P. F. Gremillion, Atty. Gen., Teddy W. Airhart, Jr., Asst. Atty. Gen., for the State of Louisiana, Baton Rouge, La., for respondent.

WEST, Chief Judge:

Petitioner, David Hensley, presently serving a five year term at the Louisiana State Penitentiary after having been convicted by a jury of violating Louisiana Revised Statutes 14:65 (simple robbery), now petitions this Court for a writ of habeas corpus. He attacks his conviction as being violative of his constitutional rights on the theory that it was obtained by the use of evidence produced as a result of an illegal search and seizure. Petitioner contends that the search and seizure was illegal because it was made as an incident to an arrest which the officers involved had no probable cause for making.

After considering the contentions of petitioner, and after a thorough review of the State Court record in this matter, this Court concludes that there is no merit to petitioner's contentions.

On the night of March 5, 1966, when petitioner was leaving a place in New Orleans called Sam's Bar and Restaurant, he met a friend, one Cal Fultz. When Fultz inquired as to where petitioner was going, petitioner answered that he was going to another bar. With petitioner's consent Fultz left with him and they drove on Dryades Street to a place between Felicity and St. Andrew Streets and parked in the middle of the block. As they left petitioner's car to go into the bar, they saw a lady standing at a bus stop. Petitioner proceeded into the bar, but his friend, Fultz, stopped to talk with the lady. Petitioner stayed only a moment or two in the bar and came out just as Fultz was about to go in. But instead of going in, Fultz, according to petitioner, went back to the lady while petitioner went down the street to a pool hall. He was there only a short time and when he came out he saw Fultz coming across the street from where he had been talking with the lady. Fultz and petitioner then got into petitioner's car, a red Ford, and the two of them drove off. About that time two police officers patrolling the area in a squad car came on Dryades Street at St. Andrew Street and heard a colored female holler that her purse had been stolen and saw her point to petitioner's departing red Ford. The officers gave chase, with their blue light and siren both turned on. After going about four blocks the patrolmen saw Fultz open the door of the car and drop a purse on the street. They continued the chase and finally overtook and stopped petitioner's car. While one patrolman watched the suspects, the other went back to try to recover the purse only to learn from a bystander that a colored boy about twelve years old had grabbed the purse and ran off with it. Neither the boy nor the purse were ever located. Petitioner and Fultz were arrested and immediately searched and some $40.36 was taken from petitioner.

Fultz had only some small change in his pocket. They were then taken back to the corner of Dryades and St. Andrew Streets where the victim identified Fultz as the person who had stolen her purse. They were then taken to the Sixth District Station where they were booked for simple robbery.

When they came up for trial Fultz pleaded guilty and petitioner pleaded not guilty. Petitioner was tried by a five man jury and found guilty. He was thereafter charged with being a multiple offender, to which charge he pleaded guilty and was then sentenced to the five year term which he is now serving.

Petitioner contends that the money was obtained as the result of an illegal search and seizure. He bases that contention on the claim that there was no probable cause for his arrest.

The validity of his arrest must be determined by reference to the law of the State of Louisiana. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The pertinent part of the law of Louisiana pertaining to arrest without warrant, as it read at the time of petitioner's arrest, provided:

"Any peace officer may, without a warrant, arrest a person:

"(1) For the commission of any felony or misdemeanor committed in his presence;

\*    \*    \*    \*    \*    \*

"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;"

In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court, in commenting on what constitutes probable cause to believe a felony has been committed, stated that an arrest, to be legal, must stand upon firmer ground than mere suspicion. The Court stated, at page 413, 83 S.Ct. at page 413:

"It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion,

\* \* \* though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, \* \* \* must be measured by the facts of the particular case."

█ In the earlier case of Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), the Court stated that probable cause exists only if the facts and circumstances known to the officer would warrant a prudent man in believing that an offense had been committed. The question to be considered is whether or not an ordinary, prudent man, under the same or similar circumstances as those in which the officer finds himself, would have had enough information to permit him to believe that the petitioner was violating or had violated the law. In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), it was noted that in dealing with probable cause we are dealing with probabilities. These probabilities are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. When taking into consideration all of the facts within the knowledge of the arresting officers in this case, including the alarm of the victim, the pursuit of the red Ford, and the abandonment, in plain view, of the purse, the conclusion must be reached that under the law of this State the arresting officers did have probable cause to arrest petitioner on March 5, 1966. The arrest having been lawful, the ensuing search and seizure, made as an incident to and following the arrest, was also a lawful search and seizure. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Therefore, petitioner's contention that he was a victim of an unlawful arrest and an illegal search and seizure is without merit. As to his contention that the money taken from him was not proved, at his trial, to be the same money lost by the victim, it is only necessary to say that the jury heard the evidence and decided adversely to petitioner's contention. This Court, in a habeas corpus proceeding, cannot concern itself with the question of guilt or innocence, but may only concern itself with the question of whether or not petitioner's federally guaranteed rights were preserved. This Court, being of the opinion that the petitioner's constitutional rights were in no way violated during the course of the proceedings had against him, his application for the issuance of a writ of habeas corpus must now be denied.